# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELK CITY GOLF AND COUNTRY CLUB, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. CIV-18-196-D ) |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff's Motion in Limine [Doc. No. 82]. Defendant has responded in opposition [Doc. No. 89], and Plaintiff has filed a reply [Doc. No. 92]. The matter is fully briefed and at issue.

Plaintiff's breach of contract and bad faith claims arise out of an insurance policy issued by Defendant to Plaintiff. Plaintiff alleges that its real and personal property was damaged or destroyed by a tornado on May 16, 2017. The factual and procedural background of the case appears in the Order of October 24, 2019 [Doc. No. 97], denying summary judgment, and will not be repeated here.

Plaintiff seeks to exclude Defendant from asserting a "fraud defense" at trial that was not asserted at the time of the denial of the claim. Plaintiff also seeks to exclude Defendant from presenting a comparative bad faith argument, and moves to strike witnesses who were not listed on Defendant's Final Witness List [Doc. No. 39], but were added by Defendant to the Final Pretrial Report [Doc. No. 83]. Finally, Plaintiff seeks to

exclude from trial evidence of its prior claims with Defendant. Upon consideration of the issues raised by the motion, the Court makes the following determinations.

**(1)    Defendant's fraud defense or new denials for the claim**

At this stage of the proceedings, Defendant has answered the Complaint and asserted its affirmative defenses [Doc. No. 5]. Defendant moved the Court for summary judgment, detailing the evidence that it contended supported its denial of Plaintiff's claim [Doc. No. 38]. The Court denied Defendant's Motion for Summary Judgment [Doc. No. 97]. Now, Defendant asserts for the first time a claim of fraud in Plaintiff's presentation of the claim, specifically in connection with the debris removal after the tornado.

Following the tornado, volunteers from the Elk City community, including country club members, assisted with the clean-up. Brad Gilbert, President of the Elk City Golf and Country Club, was one of the volunteers who assisted. According to Mr. Gilbert's deposition testimony, the golf club had an impending tournament and "needed to get 120 trees off the fairways and the greens, so [they] could proceed with business." [Doc. No. 82-2 at 2]. Mr. Gilbert advised that Ronald Murchek, Defendant's adjustor, and Darrin Patrick, the insurance agent who sold the policy to Plaintiff, advised him and the members who assisted with debris removal to submit invoices to Defendant for their services.

Mr. Gilbert (BVG Construction) submitted an invoice on June 2, 2017, for tree and debris removal in the amount of $7,200.00. [Doc. No. 82-2 at 3]. He wrote a "personal note" at the bottom of the invoice that indicated the invoice was paid on June 5, 2017. [Doc. No. 82-2 at 3-4]. Mr. Gilbert testified in his deposition that the invoice was never

paid, and that he "just wrote it off [on] my books as if the club gets money, they'll pay, and if not – I do a lot of pro bono stuff." [Doc. No. 82-2 at 3].

Mr. Murchek testified in his deposition that it was his decision to advance $100,000.00 to Plaintiff because Plaintiff had a large fundraiser at the end of the month and needed to remove debris. [Doc. No. 82-3 at 2]. After looking at the check, Mr. Murchek acknowledged that the check for $100,000.00 indicated it was an advance payment on the building loss. *Id*. at 3. There is no evidence of record, to date, that Defendant has made any payment toward debris removal.[1]

Defendant also asserts that Plaintiff misrepresented the contents of the clubhouse in submitting its claim to Defendant. Alex Alvarez, the golf course manager, testified in his deposition that he prepared, with input from club members, an itemized list of the club contents that were damaged or lost because of the tornado. [Doc. No. 89-2 at 1]. The list totaled $400,000.00, which is the coverage for the clubhouse contents under the policy. Mr. Alvarez also testified that the contents that were able to be salvaged were being stored in a train container in the club parking lot. *Id*. at 1-2. Mr. Alvarez testified that he "tried to be as thorough as possible," and that the itemized list included asterisks where the item was physically damaged or was not operable. *Id*. at 3.

---

[1] The parties agree that Defendant has paid $858,388.99 on Plaintiff's claim. The policy includes $250,000.00 coverage for debris removal. However, Mr. Murchek stated that Defendant had not paid for any debris removal because there was no proof that Plaintiff had paid the invoices submitted by the volunteers. [Doc. No. 82-3 at 4].

Mr. Gilbert's testimony supports the testimony of Mr. Alvarez. Mr. Gilbert advised that serial numbers were not provided for the items on the contents list because the items blew away in the tornado. [Doc. No. 89-1 at 12].

Defendant asserts that the fraud defense has been properly raised, and that it was not aware of Plaintiff's alleged misrepresentations until depositions in late March 2019. Defendant included the defense in the Final Pretrial Report [Doc. No. 83], filed on May 14, 2019. Further, Defendant asserts that the fraud defense was contemplated in its Answer, which provided that the affirmative defense of "Conditions precedent and subsequent to an entitlement to certain benefits under the subject insurance contract are not satisfied, by way of which claim is barred." [Doc. No. 5 at 3].

A party who alleges fraud "must state with particularity the circumstances surrounding fraud …." FED. R. CIV. P. 9(b). "Rule 9(b) applies to all claims of fraud …, including affirmative defenses." *Boardwalk Apartments, L.C. v. State Auto Prop. and Cas. Ins. Co.*, 2012 WL 3024712, at *1 (D. Kan. July 24, 2012). Further, Rule 8(c) specifically addresses affirmative defenses and imposes the additional requirement that a party "affirmatively state any avoidance or affirmative defense, including fraud." FED. R. CIV. P. 8(c)(1). "The policy behind Rule 8(c) is to put plaintiff on notice *well in advance of trial* that defendant intends to present" an affirmative defense of fraud. *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 458 (10th Cir. 1982) (emphasis added).

The Court disagrees with Defendant's assertion that its fraud defense was contemplated in its Answer, as described above. It was not pled with particularity in the Answer, and Defendant has not sought leave to amend its Answer. Assertion of the fraud

defense at this late stage in the litigation would be unfairly prejudicial to Plaintiff, particularly given the fact that Defendant has known since March 2019 of Plaintiff's alleged misrepresentations, but has never sought leave to amend its Answer, the Court has denied Defendant's motion for summary judgment, and the dispositive motion and discovery deadlines have passed. Accordingly, Defendant is precluded from raising the affirmative defense of fraud at trial.

### (2) Defendant's comparative bad faith argument

An insurance policy is a contract. *Silver v. Slusher*, 770 P.2d 878, 883 (Okla. 1988). The insured must give the insurer timely and adequate notice of a claim. *First Bank of Turley v. Fid. and Deposit Ins. Co. of Md.*, 928 P.2d 298, 304 (Okla. 1996). In turn, the insurer should conduct a reasonable investigation to determine whether there is potential liability. *Id*. The insured must "cooperate with the insurer." *Id*. An insured's failure to cooperate may give rise to a contract defense, but does not bar a bad-faith action against the carrier. *Id*. at 304 n.21. Moreover, an insured's responsibility to provide its insurer with adequate notice of the facts relating to the insurance coverage cannot "be translated into an actionable tort or into a contributory-fault defense concept for comparison with the fault of the insurer." *Id*. at 308.

In other words, there is a difference between a failure to cooperate defense and a comparative bad faith defense in the insurance context. The former is an acceptable defense, while the latter has been rejected by Oklahoma courts. Thus, Defendant can assert a failure to cooperate defense, but will be precluded from arguing comparative bad faith or contributory-fault on the part of Plaintiff.

5

### (3) Defendant's late addition of witnesses

Defendant has added numerous witnesses to its witness list in the Final Pretrial Report [Doc. No. 83] that were not included in Defendant's Final Witness List [Doc. No. 39]. Plaintiff seeks to preclude the untimely listed witnesses from testifying. In *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999), the Tenth Circuit identified four factors to consider when deciding whether to exclude a witness: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."

The discovery deadline has passed; thus, Plaintiff is precluded from obtaining discovery relating to the newly added witnesses. Aside from Mr. Alvarez, none of the late-noticed witnesses have been deposed. Defendant had nine months from the date this case was filed until it filed its Final Witness List [Doc. No. 39] to identify its trial witnesses. To wait until the discovery deadline has passed to identify additional witnesses to support its defenses is unfair and prejudicial to Plaintiff. Further, Defendant failed to timely update its FED. R. CIV. P. 26 disclosures, and that failure has not been substantially justified by Defendant. *See* FED. R. CIV. P. 26(e)(1)(A). Accordingly, Defendant is precluded from calling witnesses to testify who were added by Defendant in the Final Pretrial Report [Doc. No. 83], except Mr. Alvarez.[2]

---

[2] Defendant listed all witnesses listed by Plaintiff, which would encompass Mr. Alvarez, who was listed in Plaintiff's Final Witness List [Doc. No. 28].

### (4) Plaintiff's prior claims

Plaintiff seeks to exclude from trial evidence of its prior claims with Defendant. Plaintiff asserts that it requested, in initial discovery, copies of the claim files for its prior claims with Defendant, but that Defendant refused to produce the documents. In response, Defendant asserts that "the materials sought appeared wholly irrelevant to the claims and defenses" until after depositions were conducted, and that the materials were produced to Plaintiff when Defendant filed its response to the instant motion in limine. [Doc. No. 89 at 15-16]. Specifically, Defendant asserts that the country club roof was replaced shortly before the tornado, and that the value of the roof in the recent replacement is "completely at odds" with the estimates of Plaintiff's adjustor, James Prather.[3] *Id*.

It is unclear from the record when Defendant first received Mr. Prather's report; however, Defendant had a copy of Mr. Prather's report by January 7, 2019, the date Plaintiff attached the report to its response to Defendant's motion for summary judgment. [Doc. No. 45-6]. It seems Defendant would have discovered the relevance of the prior claim for the roof replacement before discovery was completed five months later on May 7, 2019. [Doc. No. 59 at 1]. Further, Defendant has not presented any evidence to show that it relied on the earlier roof replacement value in handling or denying Plaintiff's claim.

Once the Court enters a scheduling order, FED. R. CIV. P. 16(b)(4) provides that such order "may be modified only for good cause and with the judge's consent." The good cause standard "requires the moving party to show that it has been diligent in attempting

---

[3] Neither party describes the other prior claims; Defendant does not assert their relevance to Plaintiff's claims or Defendant's defenses.

to meet the deadlines, which means it must provide an adequate explanation for any delay." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n. 4 (10th Cir. 2006); *see also Strope v. Collins*, 315 Fed. Appx. 57, 62 (10th Cir. 2009) (unpublished).[4]

The fixing of time limits in Rule 16(b) "serves to stimulate litigants to narrow the areas of inquiry and advocacy to those they believe are truly relevant and material." FED. R. CIV. P. 16 advisory committee's note to 1983 Amendment. "Litigants are forced to establish discovery priorities and thus to do the most important work first." *Id.* Here, after several extensions, the parties agreed to a discovery cut-off date of May 7, 2019. Defendant has not provided an adequate explanation for the delay in producing the prior claims information. Accordingly, Defendant is precluded from introducing evidence of Plaintiff's prior claims.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion in Limine [Doc. No. 82] is **GRANTED**.

**IT IS SO ORDERED** this 3rd day of December 2019.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[4] "[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." FED. R. CIV. P. 16 advisory committee's note to 1983 Amendment.

8