# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELK CITY GOLF AND COUNTRY CLUB, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. CIV-18-196-D ) |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Currently pending before the Court for resolution is an outstanding issue raised by Plaintiff's Motion to Compel Discovery and Brief in Support [Doc. No. 43], regarding Defendant's failure to produce unredacted documents from its insurance claim file, based on claims of privilege for attorney-client communications and attorney work product. After a ruling by the Court [Doc. No. 98], Defendant submitted the documents at issue for *in camera* review. The documents are generally listed on Defendant's privilege log. *See* Pl.'s Mot. to Compel, Ex. 1 [Doc. No. 43-1].

"The party seeking to assert a privilege has the burden of establishing its applicability." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995). In this diversity case, Defendant's claim of attorney-client privilege is governed by Oklahoma law. *Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1275 (10th Cir. 2014); FED. R. EVID. 501. Oklahoma has codified its legal rule regarding the attorney-client privilege, which protects "confidential communications made for the purpose of facilitating the

rendition of professional legal services to the client." OKLA. STAT. tit. 12, § 2502(B). "'[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege; rather, the 'communication between a lawyer and client must relate to legal advice or strategy sought by the client.'" *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *Motley*, 71 F.3d at 1550–51; *United States v. Johnston,* 146 F.3d 787, 794 (10th Cir. 1998)).

In all federal court litigation, attorney work product is governed by Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) ("Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in FED. R. CIV. P. 26(b)(3).") (internal quotation omitted). This rule generally protects from disclosure documents "prepared in anticipation of litigation or for trial" by a party's attorney or other representative. *See* FED. R. CIV. P. 26(b)(3)(A). "Rule 26(b)(3) prevents discovery of an attorney's work product unless (1) the discovering party can demonstrate substantial need for the material and (2) the discovering party is unable to obtain the substantial equivalent of the material by other means without undue hardship." *Frontier Ref.,* 136 F.3d at 704 (footnote omitted). The rule provides additional protection for "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B).

With these legal principles in mind, the Court has reviewed the documents produced by Defendant *in camera* and finds that Defendant has failed to establish its claims of privilege with respect to most of the documents in question.

*Loss Reserves*

Many of the redacted documents relate to Defendant's loss reserves, which the Court found were discoverable in its November 15, 2019 Order [Doc. No. 98 at 5]. The redactions in the Claim Summary Report are a summary of pre-litigation communications among Defendant's claims specialist, claims supervisor, and assistant vice president noting changes to the reserves amount based on the investigation of Plaintiff's Claim. *See* PIIC CF 2–4, 6–12. Contrary to Defendant's assertion, the Claim Summary Report does not involve attorney-client communications, and aside from the first page, was prepared prior to litigation. The communications concern routine insurance business matters and are not the rendition of professional legal services. Most of these communications occurred early in Defendant's claim investigation process while it was still collecting documents and information.

Although Defendant asserts that the Claim Summary Report is proprietary in nature, Defendant does not explain how it is proprietary and the Court is unable to draw that inference. Thus, the Claim Summary Report is discoverable. *See* PIIC CF 1–12. Likewise, PIIC CF 29–65, 272–75, 313–47, 1079–85, 1119–24, and 1201 involve email communications (pre-litigation) among Defendant's claims specialist, claims supervisor, general adjuster, and assistant vice president regarding the adequacy of the reserves amount and changes thereto. For the same reasons described *supra*, they are discoverable.

The Claim Summary [PIIC CF 1358] references total reserves for prior claims by Plaintiff. The Court does not see the relevance of this document to Plaintiff's claims or to Defendant's defenses. Based on the Court's December 3, 2019 Order [Doc. No. 99 at 7–8], in which the Court found that Defendant could not introduce evidence of Plaintiff's prior claims, the Court concludes that the Claim Summary [PIIC CF 1358] is not discoverable.

*Premiums*

A substantial part of the redacted documents relates to premiums; however, Defendant does not assert a specific objection in the privilege log. Further, in a separate motion pending before the Court, Plaintiff has indicated that it does not intend to comment or argue about the amount of premiums paid [Doc. No. 87 at 31] unless Defendant makes the matter relevant to an issue in the case. The premiums do not appear facially relevant, and Plaintiff bears the burden of establishing relevance. Thus, the Court finds they are not discoverable. *See* PIIC CF 179–83, 300–01, 506, 512–13, 516, 518–19, 527, 531–32, 533, 536, 540, 542, 836, 840–43, 846, 848–49, 857, 861–63, 866, 870, 872, 1359, 1362, 1365, 1423–25.

*Property Reports*

Defendant asserts that the property reports are work product, privileged, and proprietary in nature. PIIC CF 1585–91, 1800–06, 2065–66, 2071–73. The Court disagrees. The reports are prepared by Defendant's general adjusters for the benefit and approval of the claims examiner. They do not involve attorney-client communications and were prepared prior to litigation. The reports include an estimate of loss, an abstract of

policy coverage, a summary of the adjusters' inspection and investigation, and payment recommendations. Further, Defendant does not explain how the reports are proprietary in nature, and the Court cannot draw that conclusion based on its review. Thus, the property reports are discoverable.

*Coverage Counsel Referral*

The fact that Defendant referred Plaintiff's claim to coverage counsel five days after Plaintiff filed its lawsuit is not privileged. Although coverage counsel's opinion would be protected under the attorney-client privilege, the opinion itself is not attached to the email correspondence in PIIC CF 27–28. Thus, the two emails are discoverable.

*Notice of Litigation*

PIIC CF 108–135 includes email correspondence notifying Defendant of Plaintiff's lawsuit, a copy of the Complaint, a Litigation Hold Notice which indicates that records should be preserved, and a letter from Plaintiff's counsel to Defendant's general adjuster dated three days after the lawsuit was filed. None of the email correspondence includes legal analysis or advice. PIIC CF 1331–41 and 1343–48 include the same information. The Court finds, however, that 1342 does contain a request for counsel's advice on a particular issue. This page constitutes attorney-client communications and is protected.

*Property Claims Handling Guidelines*

Defendant indicates that the Property Claims Handling Guidelines are confidential, but that Defendant will produce them pursuant to a protective order. PIIC CF 150–75, 243–68. The Court invites the parties to submit a joint motion for an agreed-upon

5

protective order to limit the disclosure or dissemination of confidential or private information.

*ISO Claims Search*[1]

Defendant asserts that the ISO Claims Search information is protected under HIPAA and the Gramm-Leach-Bliley Act, and that it includes confidential and proprietary information belonging to ISO.[2] PIIC CF 360–61. The ISO report summary appears to list a claim by Plaintiff with another insurance agency a year prior to the May 2017 tornado. Defendant, however, is not precluded from disclosing this information by the Gramm-Leach-Bliley Act. 15 U.S.C. § 6801 *et seq*. That Act does not prohibit Defendant from disclosing nonpublic personal information in response to a discovery request or order compelling discovery responses in a civil action. *See* 15 U.S.C. § 6802(e)(8); *Jones v. Farmers Ins. Co.*, CIV-11-159-R, 2012 WL 12863976, at *3 (W.D. Okla. Feb. 29, 2012); *Marks v. Glob. Mortg. Grp., Inc.*, 218 F.R.D. 492, 495–96 (S.D. W. Va. 2003). Further, no protected health information is disclosed so as to implicate HIPAA. *See* 45 C.F.R. § 164.500 *et seq*. Finally, any proprietary concerns – although Defendant does not identify or explain what those are – could be addressed through a protective order.

---

[1] The ISO ClaimSearch database is an insurance fraud detection system owned by the Insurance Services Office. It contains detailed records of losses paid from participating insurers. Insurance companies can become a member of ISO and send claims information to ISO to check whether similar claims have been filed with other insurance companies. *See generally,* Ins. Serv. Office, *ISO ClaimSearch,* VERISK, https://www.verisk.com/insurance/products/claimsearch/ (last visited Dec. 19, 2019).

[2] Defendant also asserts that the privilege is claimed by ISO; however, Defendant does not cite to any authority that gives it standing to assert a privilege that belongs to ISO.

Relevance for purposes of discovery remains broader than relevance for purposes of trial admissibility, and the trial court is given "wide discretion in balancing the needs and rights of both plaintiff and defendant." *See, e.g.*, FED. R. CIV. P. 26(b)(1); *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (internal quotation marks and citation omitted); *see also Tanner v. McMurray*, 2019 WL 2008991, at *44, __ F.Supp.3d ___ (D.N.M. 2019). Construing relevance for purposes of discovery broadly, the Court finds that the ISO Claims Search information is relevant to Plaintiff's claims or Defendant's defenses and is proportional to the needs of the case; thus, it is discoverable. *Tanner*, 2019 WL 2008991, at *49.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion to Compel Discovery and Brief in Support [Doc. No. 43] is **GRANTED** in part and **DENIED** in part. Defendant shall produce to Plaintiff, within fourteen days from the date of this Order, unredacted copies of the documents produced *in camera*, except the documents identified *supra* that are not relevant to Plaintiff's claims or contain privileged communications. The parties may submit a joint motion for an agreed protective order to address those issues identified *supra* where dissemination should be limited.

**IT IS SO ORDERED** this 26th day of December 2019.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge