# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ELK CITY GOLF AND COUNTRY CLUB, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-18-196-D |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant's Combined Motions in Limine [Doc. No. 80]. Plaintiff has responded in opposition [Doc. No. 87], and Defendant has filed a reply [Doc. No. 93]. The matter is fully briefed and at issue.

Plaintiff's breach of contract and bad faith claims arise out of an insurance policy issued by Defendant to Plaintiff. Plaintiff alleges that its real and personal property was damaged or destroyed by a tornado on May 16, 2017. The factual and procedural background of the case appears in the Order of October 24, 2019 [Doc. No. 97], denying summary judgment, and will not be repeated here.

Defendant seeks to exclude evidence, testimony, or argument regarding sixteen subject areas: 1) an insurer's legal duties to insureds; 2) alleged fiduciary duties owed by Defendant; 3) the Oklahoma Unfair Claim Settlement Practices Act; 4) Defendant's post-litigation conduct; 5) claims of privilege; 6) expert opinions of lay witnesses or opinions of an expert outside the reasonable confines of his area of expertise; 7) expert testimony

not previously disclosed or based on documents or evidence not produced in discovery; 8) Defendant's loss or expense reserves; 9) news articles and related media, including comments on social media; 10) comparisons to the Moore tornadoes or other tornadoes; 11) deaths or bodily injuries incurred from the May 16, 2017 tornado; 12) stereotypes of "wealthy insurance companies" and "poor" or "disadvantaged" insureds; 13) the construction and interpretation of the insurance agreement at issue; 14) duration of Plaintiff's relationship with Defendant and the amount of premiums paid; 15) financial information of Defendant during the liability phase of the trial; and 16) testimony by counsel whether through questioning or other means.

In response, Plaintiff states that it does not intend to comment or argue about a fiduciary duty, privilege or claims of privilege, or present testimony from counsel. Plaintiff also does not anticipate presenting evidence of news articles or related media; comparisons to the Moore tornadoes or other tornadoes; deaths or bodily injuries sustained in the Elk City tornado; stereotypes of "wealthy insurance companies" and "poor" or "disadvantaged" insureds; the duration of its relationship with Defendant or the amount of premiums paid; or Defendant's financial information in the liability phase of the trial. Further, Plaintiff agrees that neither party should present lay or expert testimony purporting to interpret the terms of the insurance policy at issue.[1]

---

[1] Much of Defendant's motion amounted to little more than a request that Plaintiff adhere to the rules of evidence, and otherwise avoid areas Plaintiff had no intention of pursuing in the first place. Thus, the motion in large part was a waste of time and judicial resources.

2

Therefore, the Court finds that the only issues presented for decision by Defendant's motion concern the following five categories of evidence (renumbered for convenience): 1) Defendant's legal duties; 2) the Oklahoma Unfair Claim Settlement Practices Act; 3) Defendant's post-litigation conduct; 4) expert testimony; and 5) Defendant's loss and expense reserves.

1. **Evidence concerning Defendant's legal duties**

Defendant contends that evidence of the legal duties it owes Plaintiff and evidence of its claims handling practices, including questions of its own adjusters, should be excluded pursuant to FED. R. EVID. 403, 701, and 702. Plaintiff asserts that asking Defendant's adjusters about their knowledge and training regarding claims handling practices, or about the industry's claims handling standards, does not invade the province of the Court or jury. Further, Plaintiff maintains that Defendant's adjusters are mixed fact/expert witnesses, and that if they do not state a legal conclusion, they may refer to the law in expressing their opinions.

The Court finds that the evidence Defendant seeks to exclude may be relevant to Plaintiff's breach of contract and bad faith claims. Plaintiff is permitted to establish whether Defendant breached its contractual duties or acted in bad faith and, to the extent Defendant's claims handling demonstrates a breach of its contractual duties or indicates unreasonableness or bad faith on Defendant's part, such evidence may be admissible. Plaintiff may inquire of Defendant's adjusters about Defendant's claims handling practices and the industry standards based on the adjusters' training and experience.

Moreover, there are limitations on the adjusters' testimony.[2] "In no instance can a witness be permitted to define the law of the case." *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988). The adjusters cannot testify as to the legal parameters for bad faith under Oklahoma law, because it is the duty of the Court to instruct the jury on the law. In addition, the adjusters are not permitted to offer any opinion of the ultimate conclusion as to whether Defendant acted in bad faith or breached the contract.

    **2.**    **Evidence concerning the Oklahoma Unfair Claim Settlement Practices Act**

Defendant moves to preclude Plaintiff from referencing or introducing into evidence the Oklahoma Unfair Claim Settlement Practices Act ("UCSPA"), OKLA. STAT. tit. 36, § 1250.1 *et seq*. Defendant argues that no private right of action exists under the UCSPA and to allow Plaintiff to argue the UCSPA establishes industry standards or imposes certain standards on Defendant with respect to claims handling is irrelevant, misleading, and unfairly prejudicial. Plaintiff asserts that Defendant's claims handling expert, Arthur Bates, has previously testified that the UCSPA sets a minimum standard of conduct for insurers and provides guidance in determining whether an insurer's actions were in good faith. Plaintiff does not identify any provision of the UCSPA it intends to rely on at trial; thus, the Court cannot make a meaningful determination of what evidence, if any, to exclude.

The UCSPA "does not establish standards of care or standards of conduct for measuring whether an insurer has violated its duty of good faith and fair dealing," nor does

---

[2] These limitations apply equally to adjusters for Defendant and Plaintiff.

it provide a private right of action. *Aduddell Lincoln Plaza Hotel v. Certain Underwriters at Lloyd's of London*, 348 P.3d 216, 223 (Okla. Civ. App. 2014). Further, the UCSPA "may provide guidance to a trial court in determining whether to grant summary judgment, but it does not function as an appropriate guide for a jury to determine bad faith." *Id.* at 224. Considering *Aduddell*, it appears that any evidence that Defendant's conduct allegedly violated the UCSPA would be unfairly prejudicial. *See* FED. R. EVID. 403.

With these admonitions, the Court reserves ruling on this matter. Without citation to any specific provision of the UCSPA, or the nature of any related reference, any ruling now would be premature.

### 3. Evidence concerning Defendant's post-litigation conduct

Defendant also seeks to exclude evidence, testimony, and argument concerning its post-litigation conduct and claims handling. Defendant cites *Andres v. Okla. Farm Bureau Mut. Ins. Co.*, 290 P.3d 15, 18 (Okla. Civ. App. 2012) and *Timberlake Constr. Co. v. U.S. Fid. and Guar. Co.*, 71 F.3d 335, 341 (10th Cir. 1995), for the proposition that an insurer's litigation activities should rarely, if ever, be admissible on the issue of bad faith. Defendant asserts that evidence of its post-litigation conduct regarding Plaintiff's claim is unfairly prejudicial under FED. R. EVID. 403.

Plaintiff contends that Defendant "has never sent a denial letter per se other than a terse rejection of Plaintiff's repair and replacement cost estimates without explanation," and that, unlike *Timberlake*, Plaintiff is not seeking to introduce evidence of litigation activities by defense counsel but rather evidence that Defendant has engaged in continuing bad faith conduct. [Doc. No. 87 at 16, 18]. Plaintiff asserts, and Defendant concedes, that

5

the duty of good faith and fair dealing does not stop when a lawsuit is filed. *See, e.g., Hale v. A.G. Ins. Co.*, 138 P.3d 567, 571–72 (Okla. Civ. App. 2006) ("[T]he analysis in bad faith cases indicates the cutoff for relevant evidence is the date of payment or denial of the claim.").

Upon consideration of the cases cited and review of the record, the Court finds itself unable to draw the bright-line rule sought by Defendant, barring admission of all evidence regarding post-litigation conduct. Aside from Defendant's rejection of Plaintiff's repair and replacement cost estimates on January 25, 2018 [Doc. No. 38-6], the Court finds no denial of Plaintiff's claim in the record. That same day, Defendant's general adjuster, Ronald Murchek, requested additional documents from Plaintiff to determine the business income loss. *Id*. Here, the parties appear to agree that some post-litigation facts, such as the documentation for business income loss, are relevant. Defendant has indicated it did not receive sufficient information to calculate business income loss while Plaintiff contends that such information has been in Defendant's possession for a considerable amount of time. Further, Defendant asserts that Plaintiff failed to cooperate or perform conditions precedent to entitlement of certain benefits under the policy. Defendant should not be allowed to rely on post-litigation events to support its affirmative defense while denying Plaintiff the opportunity to refute this affirmative defense with post-litigation facts that it did cooperate or attempt to comply with the policy.

Here, claim review appears to be ongoing. Moreover, the conduct Plaintiff apparently seeks to admit does not pertain to litigation *per se*, but rather pertains to Defendant's continuing investigation. Such conduct is directly relevant to the

reasonableness of Defendant's delay in resolving Plaintiff's claim.  "The claim in this case has been neither fully paid nor denied, continuing the duty of good faith and fair dealing well into the litigation."  *Higgins v. State Auto Prop. & Cas. Ins. Co.*, 2012 WL 2571278, at *6 (N.D. Okla. July 2, 2012).

Accordingly, the Court finds that the parties' post-litigation conduct related to continued claims investigation, evaluation, processing, and payment or non-payment will generally be deemed admissible.  However, Defendant's specific objections based on relevance and undue prejudice should be asserted at trial as appropriate.

**4.   Expert testimony by lay witnesses, testimony outside an expert's expertise, expert testimony based on evidence not reviewed, or expert testimony as to documents not produced in discovery**

Defendant seeks to exclude lay witnesses from providing expert testimony; expert testimony based upon materials not reviewed; experts from testifying outside their purported expertise; expert testimony by witnesses not previously disclosed as experts; and testimony by experts based upon documents or evidence not produced in discovery.  Essentially, Defendant is asking that Plaintiff follow FED. R. EVID. 701–704 in presenting expert testimony at trial.  Defendant does not assert a *Daubert* objection, and the time for filing a *Daubert* motion has passed.  No response from the Court is necessary.  The parties may make contemporaneous objections during trial if the proffered testimony exceeds the boundaries of expert testimony under the Federal Rules of Evidence.

**5.   Evidence concerning Defendant's loss and expense reserves**

Defendant objects to the introduction of evidence concerning its loss reserves for Plaintiff's insurance claim as irrelevant and prejudicial.  Defendant argues that setting loss

7

reserves is simply a business or accounting practice and satisfies a regulatory requirement, but the jury is likely to misinterpret the evidence as an admission of liability. Plaintiff contends that Defendant's setting of a $2,575,703.80 loss reserve on Plaintiff's insurance claim shows Defendant's internal assessment of the claim's potential value and is relevant to the subjective component of Plaintiff's bad faith claim.[3]

Upon consideration, the Court finds that evidence of Defendant's loss reserves is relevant to Plaintiff's bad faith claim and that Defendant has failed to show the probative value of the evidence is substantially outweighed by a danger of unfair prejudice. *See, e.g., Shadid, L.L.C. v. Aspen Specialty Ins. Co.*, Case No. CIV-15-595-D, 2018 WL 3420816, at *5 (W.D. Okla. July 13, 2018) (on a motion in limine, the Court held that evidence of the insurance company's loss reserves was relevant to the insured's bad faith claim); *Fox v. Country Mut. Ins. Co.*, Case No. CIV-17-1228-SLP (W.D. Okla. Nov. 27, 2018) [Doc. No. 118] (denying the defendant's motion in limine and finding that evidence of the defendant's loss reserves was relevant and not substantially outweighed by any danger of unfair prejudice).

Further, the Court finds that any prejudice can be avoided by using an appropriate jury instruction. The parties are invited to proffer a limiting instruction regarding evidence of insurance loss reserves for use during the trial and at the completion of the evidence. Subject to this condition, the Court finds that Defendant's motion regarding loss reserves should be denied.

---

[3] Defendant's own adjuster, Ronald Murcheck, preliminarily estimated the total loss at $2.5 million [Doc. Nos. 45-3 at 2, 45-4 at 2].

## CONCLUSION

Based on the foregoing, Defendant's Combined Motions in Limine [Doc. No. 80] is GRANTED in part, DENIED in part, and RESERVED in part as set forth herein.

**IT IS SO ORDERED** this 3rd day of January 2020.

TIMOTHY D. DeGIUSTI
Chief United States District Judge